CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

July 16, 2026

LAURA A. AUSTIN, CLERK
BY: _/s/ Hannah Warren_
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **ADEIRA CELEENE WRIGHT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 7:26-CV-00461** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CITY OF ROANOKE, et al.,** | ) | **By: Hon. Robert S. Ballou** |
| | ) | **United States District Judge** |
| **Defendants.** | ) | |

### <u>MEMORANDUM OPINION</u>

Plaintiff Adeira Celeene Wright, proceeding pro se, brings claims for denial of procedural

due process. She first claims that individual Defendants Jane Conlin, in her individual capacity

as former Director of Human/Social Services, Lynette Jobe, in her individual capacity as former

CPS Supervisor, and John Does 1–5, in their individual capacities as unknown employees of

Roanoke City Department of Social Services ("DSS"), unlawfully deprived her of procedural

due process in child abuse and neglect proceedings in 2016. The Complaint[1] also alleges that the

City of Roanoke is liable for these 2016 due process violations because its official policy and

custom as to child abuse and neglect proceedings is constitutionally deficient. Finally, Wright

brings claims against Defendants Donald Goss, II, in his individual capacity as CPS

Investigations Supervisor, and S. Duke Storen, in his official capacity as Commissioner of DSS,

---

[1] Courts in the Fourth Circuit frequently consider facts alleged by pro se plaintiffs in deciding a motion to dismiss, even if they are improperly alleged outside of the complaint. *Holley v. Combs*, 134 F.4th 142, 144 (4th Cir. 2025); *see also*, *Goines v. Valley Community Services Board*, 822 F.3d 159, 166 (4th Cir. 2016) (holding that courts may consider documents explicitly incorporated by reference or otherwise integral to the complaint). Because the Complaint references DSS records attached to the Memorandum of Law in Support of Wright's Motion for a Preliminary Injunction, I have liberally construed the Complaint to include those exhibits. Dkts. 7-1–7-19.

alleging that they committed additional due process violations by "ratifying" the earlier procedure and denying her requests for redress. Wright brings her due process claims under 42 U.S.C. § 1983. Wright also filed several additional motions to proceed in forma pauperis (Dkt. 2), for appointment of counsel (Dkt. 4), and for a preliminary injunction (Dkts. 5–7). Pursuant to mandated screening of a pro se complaint under 28 U.S.C. § 1915(e)(1), I find that Wright's claims relating to the 2016 alleged deprivation are time-barred, so they are dismissed with prejudice. Wright's claims against Defendants Goss and Storen must be dismissed without prejudice for failure to state a claim. Therefore, Wright's action is dismissed.

## I.      Background

Wright's claims arise out of her placement on the Virginia State Central Registry system. Dkt. 1 ¶ 4. The Central Registry is a database that contains identifying information about individuals who are the subject of founded child abuse or neglect dispositions. A complaint or report alleging child abuse or neglect is "founded" if "a review of the facts gathered as a result of an investigation shows by a preponderance of the evidence that child abuse or neglect has occurred." 22 Va. Admin. Code 40-705-10. Following investigation, DSS's founding disposition must be provided to the subject of the investigation. Va. Code § 63.2-1505(B)(5). If, as in this case, the allegation of child abuse or neglect is founded, the perpetrator is placed on the Central Registry. Va. Code § 63.2-1515. Wright is listed on the Central Registry due to two founded dispositions identifying her as a neglector. Sealed Exhibit 8.

The first disposition, DSS Ref. 208774 ("first founded disposition"), found Wright guilty of physical neglect of four of her children. Dkt. 1 ¶ 15A; Sealed Exhibit 3. On October 2, 2015,

DSS received a report regarding the safety and welfare of AW[2] (then 14 years old), Wright's oldest child. Dkt. 7-13 at 2. AW was admitted to the inpatient psychiatric unit at Carilion Hospital on September 26, 2015 "because she disclosed wanting to harm herself because she was forced to care for her younger siblings." *Id*. DSS initiated an in-home investigation and removed all four children from Wright's care. *Id*. at 11. Ultimately, DSS found Wright guilty of physical neglect of all four children because she relied on AW to care for her three younger siblings, KLAW (then 7 years old), KLW (then 3 years old), and KAW (then 2 years old). Dkt. 7-13 at 11. Wright was apparently aware that AW suffered from significant mental health challenges, including Oppositional Defiant Disorder and suicidal ideation, but still left her other young children in AW's care. *Id*. Based on these findings, DSS issued a founded disposition for Level 1[3] physical neglect of all four children due to inadequate supervision. *Id*.

Because DSS found that Wright committed Level 1 neglect, her name was submitted to the Central Registry and was to be retained for 18 years.[4] Sealed Exhibit 3. Wright does not dispute the factual accuracy of DSS findings but alleges that she did not receive notice of the first founded disposition. Dkt. 1 ¶ 15A ("DSS's own Summary of Notifications . . . page 110 . . . shows every mandatory notification field blank for Plaintiff as the Alleged Abuser/Neglector."). According to the Complaint, Wright did not discover that she was listed on the Central Registry

---

[2] AW is no longer a minor but is referred to by her initials because she was a minor when the abuse occurred.

[3] "Level 1" neglect refers to the severity of the neglect in this case. Level 1 "includes those injuries or conditions, real or threatened, that result in or were likely to have resulted in serious harm to a child." 22 Va. Admin. Code 40-705-110.

[4] The length of retention of identifying information on the Central Registry is determined by the severity of neglect or abuse. For Level 1 abuse or neglect, the information shall be retained on the central registry for eighteen years past the date of the complaint. 22 Va. Admin. Code 40-705-130.

until February 6, 2026. *Id*. DSS records attached to the Complaint suggest that DSS mailed the disposition notification to Wright on March 1, 2016. Sealed Exhibit 3. Wright argues that DSS has not provided evidence of notification, noting that "DSS has not produced a certified mail receipt or any other proof of service establishing that the March 1, 2016 [first] founded disposition notice . . . was ever mailed to Plaintiff." Dkt. 1 ¶ 16. Wright also alleges that the founding determination was made without neutral review because Defendant Lynette Jobe, who made the founding determination, had a conflict of interest that "arose from her dual role as both the supervisor who directed the child removals underlying the investigations and the official who co-signed and issued the founded determinations." *Id*. ¶ 15D.

The second disposition, DSS Ref. 2104476 ("second founded disposition"), was based on Level 1 physical neglect of DW. *Id*. ¶ 15B. On January 20, 2016, DSS received a report that indicated that DW showed signs of withdrawal from Subutex and neonatal abstinence syndrome shortly after birth. Dkt. 7-15 at 2; Dkt. 1 ¶ 15B. Wright was lawfully prescribed Subutex. *Id*. DSS assigned Jobe to investigate the neglect allegations. Jobe determined that the physical neglect allegation was founded based on Wright's extensive history with DSS and struggles with substance abuse. Dkt. 7-16 at 2. DSS issued a notification of the disposition on May 3, 2016. Dkt. 7-14 at 2. Although Wright claims that she did not receive the written notification,[5] she states that she did receive notice of the founding determination. Dkt. 1 ¶15B.

Exercising her right to appeal, as permitted under Va. Code § 63.2-1526, Wright submitted a written appeal addressed to the Commissioner requesting "administrative review before a hearing officer." Sealed Exhibit 4. At the first level of appeal, DSS is directed to "hold

---

[5] Despite Wright's claim that she did not receive written notification of the disposition, Wright's handwritten appeal references receiving a letter charging her with neglect. *See* Sealed Exhibit 4.

an informal conference" at which time the alleged neglector is entitled to present evidence to dispute the finding. Va. Code § 63.2-1526. If, following the local conference, DSS decides to maintain the finding of neglect, the alleged neglector may petition the DSS Commissioner for an additional hearing. *Id*.

On June 17, 2016, Jane Conlin, Director of Human/Social Services, notified Wright that a local conference would be held regarding the second founded disposition on July 8, 2016. Sealed Exhibit 6. In her complaint, Wright alleges that she was deprived of her appellate rights because she addressed her hearing request to the Commissioner. Dkt. 1 ¶ 20. Therefore, Wright reasons that she should have been afforded an initial hearing before the Commissioner, instead of being required to first attend a local conference. *Id*. ¶ 15B ("Director Conlin intercepted that appeal, substituted a local conference, and no documentation has been produced showing the Commissioner reviewed the second founded disposition.").

On July 12, 2016, following the conference, DSS declined to amend the founded disposition. Sealed Exhibit 7. Conlin notified Wright of the decision and informed her that her name would remain on the Central Registry for eighteen years and that she could appeal the disposition by written petition to the Commissioner. *Id*. Wright alleges that this notification "improperly restarted the Commissioner appeal clock as if Plaintiff's June 14 submission had never occurred." Dkt. 1 ¶ 21. Based on the information contained in the Complaint, it does not appear that Wright appealed the conference decision. Wright also asserts that she believed that the absence of a Commissioner decision meant the disposition had been resolved in her favor. *Id*. ¶ 23.

Wright's listing on the Central Registry causes her reputational harm. *Id*. ¶ 25. Professionally, the listing prevents Wright from pursuing her chosen career. *Id*. The Central

Registry is not publicly available but may be disclosed to certain employers upon request. Va. Code § 63.2-1515. Individuals who are the subject of a founded complaint of child abuse or neglect cannot work for an assisted living facility or adult day center. Va. Code § 63.2-1720(A). Due to these limitations, Wright asserts that she cannot operate her business, Pain 2 Purpose LLC, in its intended capacity, and cannot take a job as a Virginia Peer Support Specialist or work for DSS. Dkt. 1 ¶ 49. Wright also argues that the listing harms her reputation in her role as a parent and caregiver. *Id*. ¶ 49f ("The Central Registry listing is used against Plaintiff in any proceeding or review involving her children, including custody matters, caregiving authorizations, and activities requiring background clearance for participation. Plaintiff is stigmatized as a neglector in every context where Social Services involvement occurs.").

For relief, Wright requests compensatory and nominal damages and injunctive relief. *Id*. at 21–22. For injunctive relief, Wright requests a "name-clearing hearing before a neutral decisionmaker." *Id*. at 21. Wright also filed a motion for a temporary restraining order, which also requests a hearing and temporary removal of Wright's name from the Central Registry. Dkt. 5 at 6. Wright alleges that the individual Defendants caused these injuries by denying her procedural due process, and by "ratifying" the deprivation in their 2026 correspondence with her about the Central Registry listing. She also alleges that the City of Roanoke violated her procedural due process rights through its unconstitutional policy of "intercept[ing] and reclassify[ing] Plaintiff's Commissioner appeal as a local conference" and "treating local conferences as the final administrative step in the CPS appeals process." Dkt. 1 ¶¶ 39, 40A.

## II.    Legal Standard

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the court must dismiss a case filed *in forma pauperis* if "at any time [ ] the court determines that ... the action or appeal: (i) is frivolous or

6

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." An action is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory" and lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Guynup v. Cullen*, No. 5:21-CV-00079, 2022 WL 3359367, at *2 (W.D. Va. Aug. 15, 2022) (quoting *Neitzke*, 490 U.S. at 327–28). Although the frivolousness determination cannot serve as a factfinding process, the court need not accept all allegations as "having an arguable basis in fact." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (citing *Neitzke*, 490 U.S. at 325). In short, the district court is directed to dismiss claims that are clearly baseless. *Nasim v. Warden*, 64 F.3d 951, 954 (4th Cir. 1995). The Court may also summarily dismiss an action filed in forma pauperis if it is clear from the face of the complaint that the plaintiff's claims are time barred. *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 (4th Cir. 2006); *Nasim*, 64 F.3d at 954–56.

As a pro se litigant, Wright's pleadings are afforded liberal construction and held to a less stringent standard than formal pleadings drafted by counsel. *See Erickson*, 551 U.S. at 94. Liberal construction is particularly important when pro se complaints allege civil rights violations. *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). However, "[a] pro se plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. 2021) (internal citations omitted).

### III.    Discussion

Even applying liberal construction, Wright's pleadings must be dismissed. Wright alleges that Defendants deprived her of procedural due process in violation of the Fourteenth Amendment. To establish a procedural due process claim, the plaintiff must show that (1) state

7

action deprived her of a protected interest in life, liberty, or property and (2) the state provided inadequate process. *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). "At bottom, procedural due process requires fair notice of impending state action and an opportunity to be heard." *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 146 (4th Cir. 2014) (citing *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976)). Wright's claims against Conlin, Jobe, John Does 1–5, and the City of Roanoke for conduct that occurred in 2016 and policies in place at that time are time barred. Additionally, Wright's claims against Conlin, Jobe, and John Does 1–5 fail to state a claim because it is not clear that Wright asserts a protected interest and the record reflects that she received due process. Wright's claims against Storen and Goss fail to identify state action that deprived her of a protected interest. Finally, Wright cannot assert municipal liability against the City of Roanoke, assuming that claim is not time barred, because she fails to show an underlying constitutional violation.

A. Statute of Limitations

Wright brings two claims for actions that occurred in 2016. First, she alleges that Defendants Conlin, Jobe, and John Does 1–5 violated her procedural due process rights in their handling of her child abuse cases in 2016. Dkt. 1 ¶¶ 31–35. Second, Wright alleges municipal liability. Specifically, Wright claims that the City of Roanoke employed an unconstitutional policy by "intercept[ing] and reclassify[ing] Plaintiff's Commissioner appeal as a local conference" and "treating local conferences as the final administrative step in the CPS appeal process." Dkt. 1 ¶¶ 39, 40A. Because the face of the complaint clearly demonstrates that these claims are barred by the statute of limitations, they are dismissed.

Section 1983 does not include its own specific statute of limitations. *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 388 (4th Cir. 2014). Because "'§ 1983 claims are best

characterized as personal injury actions,' . . . a state's personal injury statute of limitations should be applied to all § 1983 claims." *Cooper v. City of Wheeling*, 169 F.4th 220, 224 (4th Cir. 2026) (quoting *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)). The Virginia statute of limitations for personal injury claims is two years. Va. Code § 801-243(a). The two-year period to bring a claim begins to run when the claim accrues.

The time of accrual for a § 1983 claim is governed by federal law. *Owens*, 767 F.3d at 388 (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). Generally, a claim accrues "when the plaintiff knows or has reason to know of his injury."[6] *Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 886 (4th Cir. 2023) (citations omitted); *Smith v. Travelpiece*, 31 F.4th 878, 883 (4th Cir. 2022) ("This standard inquiry requires determining when all the cause of action's elements are met, since only at that point is there a 'complete and present' cause of action on which to file suit." (citations omitted)). A procedural due process claim accrues when (1) state action deprives the plaintiff of a protected interest in life, liberty, or property and (2) the state provides inadequate process. *Reed*, 598 U.S. at 236 (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).

Assuming Wright asserts a constitutionally protected interest, her claim would normally accrue when the state provided inadequate process. *See Perry v. City of Norfolk*, 194 F.3d 1305, *5 (4th Cir. 1999) (table) ("[W]e assume that Perry does have a liberty interest in not being listed as a child abuser in the CANIS registry, an assumption that appears reasonable because this

---

[6] Although this "standard rule" does not apply if the most analogous common law tort has a "distinctive" rule for determining when the limitations period beings to run, the standard rule applies to procedural due process claims. *Owens*, 767 F.3d at 388–89; *Doe v. Virginia Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 490 (W.D. Va. 2019) (holding that the statute of limitations period for procedural due process claims under § 1983 is the state limitations period for personal injury claims).

listing indirectly cost him his job."); *Reed*, 598 U.S. at 236. According to Wright's allegations, she was first listed on the Central Registry on March 1, 2016, when DSS issued the first founded disposition. Wright alleges that DSS failed to provide adequate notice at that time. The Fourth Circuit has held that a procedural due process claim accrues when the adjudicating body reaches a final determination in the case. *Reid v. James Madison Univ.*, 90 F.4th 311, 321 (4th Cir. 2024) (procedural due process claim accrued when Title IX proceedings ended); *Reed*, 598 U.S. at 237 (procedural due process claim accrued when state litigation ended). This Court has held that a claim accrues at the time of the initial final decision, regardless of any appellate process. *Doe*, 400 F. Supp. 3d at 492–93. Therefore, the notice of the founded disposition is the "final decision" in this case. DSS issued notification of the first founded disposition on March 1, 2016. Sealed Exhibit 3. Wright's claim of denial of due process as to the first founded disposition accrued on March 1, 2016. The statute of limitations expired on March 1, 2018. Therefore, Wright's claims of denial of due process as to the first founded disposition are time barred. Similarly, DSS issued notification of the second founded disposition on May 3, 2016. Dkt. 7-14 at 2. Even if the local conference determination for the second founded disposition is considered the "final decision," that determination was issued on July 12, 2016. Sealed Exhibit 7. In either case, the statute of limitations expired in 2018. Wright's claims of denial of due process as to the second disposition are also time barred.

Wright argues that the discovery rule, fraudulent concealment, and continuing violations allow her to avoid the statute of limitations in this case. Because Wright knew or should have known that she was listed on the Central Registry in 2016, and that she allegedly did not receive adequate process at that time, these arguments are unpersuasive.

     1. *The Discovery Rule*

Wright argues that the "discovery rule" tolled the statute of limitations in this case. Dkt. 1 ¶ 46. Under the discovery rule, the statute of limitations begins to run "when a plaintiff knew or should have known of his injury." *Rotella v. Wood*, 528 U.S. 549, 553–54 (2000). Wright asserts that she did not discover that she was listed on the Central Registry until February 6, 2026. Dkt. 1 ¶ 46. Although Wright alleges that she was deprived of adequate process in the first and second founded dispositions, a practice of providing inadequate process by DSS, and recent "ratification" of the unlawful process, the focus of her suit is the listing on the Central Registry. The listing caused all the asserted injuries to her reputation and employment prospects. Despite Wright's allegations, she cannot plausibly allege that she was unaware of the Central Registry listing until February 6, 2026. According to the DSS records attached to her Complaint, Wright received notice of the listing on at least three occasions. *See* Sealed Exhibit 3 (first founded disposition notification letter including notice of listing on the Central Registry); Sealed Exhibit 7 (notification of disposition following local conference for second founded disposition including notice of listing on the Central Registry); Dkt. 7-14 at 2 (second founded disposition notification letter including notice of listing on the Central Registry). These records undercut Wright's assertion that she was unaware of the injury until February 6, 2026.

Additional evidence negates Wright's assertion of ignorance of the listing. At least some of Wright's children were removed from her care during the two investigations. Dkt. 7-13 at 2. According to the Complaint, she does not currently have custody of these children. *See* Dkt. 1 ¶ 49f ("Plaintiff currently has custody of two children, including a six-year-old daughter."). Wright's assertion that she believed that "the absence of a Commissioner decision meant the matter had been resolved in her favor" is unconvincing. *Id*. ¶ 23. Common sense dictates that had the allegations been determined to be unfounded, Wright would have regained custody of her

11

children. This fact, coupled with the extensive evidence of notification and Wright's admission

that she was at least aware of the second founded disposition, renders her assertion that she was

unaware of the Central Registry listing until February 6, 2026, wholly incredible. In short, the

record reflects that Wright knew or should have known that she was listed on the Central

Registry in 2016. Therefore, the discovery accrual rule does not render her claims timely.

### 2.  *Fraudulent Concealment*

Wright also alleges she should be able to avoid the statute of limitations based on the

equitable doctrine of fraudulent concealment.[7] Dkt. 1 ¶ 47. To apply the doctrine of fraudulent

concealment and toll the limitations period, "'a plaintiff must demonstrate: (1) the party pleading

the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim,

and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the

exercise of due diligence.'" *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 548 (4th Cir. 2019)

(quoting *Supermarket of Marlinton v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir.

1995)). Because Wright failed to exercise due diligence to discover the facts that are the basis of

her claim, I disagree.

As to the first requirement, Wright alleges that Defendants committed three affirmative

acts of fraudulent concealment: (1) failure to mail her the first founded disposition, (2) failure to

forward her appeal for review by the Commissioner, and (3) issuing a misleading letter regarding

the appeal. Dkt. 1 ¶ 47. Wright's assertion that DSS failed to mail the first founded disposition is

contradicted by the record. *See supra* III.A.1. As to the additional allegedly fraudulent acts of

concealment, DSS did not forward Wright's appeal of the second founded disposition to the

---

[7] The doctrine of fraudulent concealment is one equitable doctrine that allows a plaintiff to avoid
a statute of limitations. Wright does not assert that the other two equitable doctrines—equitable
estoppel and equitable tolling—apply, so only fraudulent concealment is addressed.

Commissioner because the first level of appeal is the local conference. Va. Code § 63.2-1526. DSS informed her of the availability of Commissioner review in the local conference decision. *See* Sealed Exhibit 7. It cannot be said that DSS, in following the prescribed statutory procedures and informing Wright of her right to appeal in writing, committed fraudulent concealment.

Despite her allegations that equitable tolling applies, Wright also fails to assert that she was unaware of the facts that form the basis of her claim. Although Wright claims that she did not receive written notice of either disposition, her appeal request for the second founded disposition states "I received a letter charging me with neglect." Sealed Exhibit 4. The second founded disposition letter, to which she appears to be referring, states that Wright would be listed on the Central Registry for 18 years. Dkt. 7-14 at 2. Wright's asserted belief that the matter had been resolved in her favor and ignorance as to her appellate rights is irrelevant. *See United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (collecting cases) (holding that ignorance of the law does not constitute a basis for equitable tolling).

Finally, even assuming that DSS fraudulently concealed a due process violation by failing to mail Wright the first founded disposition and she was unaware of that disposition during the statutory period, she did not exercise due diligence to discover the bases of her claims. Under Virginia regulations, "[a]ny individual, including an individual against whom allegations of child abuse or neglect were made, may exercise his rights . . . to access personal information related to himself that is contained in the case record, including, with the individual's signed consent, a search of the Central Registry." 22 Va. Admin. Code 40-705-160. Wright was aware that she was under investigation for child abuse, as evidenced by her appeal of the second founded disposition. *See* Sealed Exhibit 4. She was familiar with DSS investigatory processes, because she was the subject of seven different investigations. Sealed Exhibit 8. Several of Wright's

13

children had been removed from her care. Dkt. 7-13 at 2. Because Wright apparently made no inquiries as to the status of the first and second founded dispositions, despite ample avenues to do so, she did not exercise due diligence in this case. Therefore, equitable tolling does not apply.

### 3. Continuing Violations

Finally, Wright alleges that recent unconstitutional acts render her Complaint timely as to the 2016 deprivations. Specifically, Defendant Goss "ratified" the unconstitutional procedure in written communications on April 8, 2026, and Defendant Storen failed to respond to her request for a hearing on April 28, 2026. Dkt. 1 ¶¶ 48(b)–(c). Wright alleges that these actions are part of a series of related unconstitutional acts, and her entire claim "is timely if at least one act falls within the limitations period." *Id*. ¶ 48. Because Wright's arguments misstate controlling law, the "continuing violations" do not render her 2016 claims timely. Even when a plaintiff alleges a continuing violation, "only incidents that took place within the timely filing period are actionable." *Nat'l R.R. Passenger v. Morgan*, 536 U.S. 101, 114 (2002). Therefore, recent, allegedly unconstitutional acts do not render the 2016 claims timely.

### B. Failure to State a Claim

In the alternative, Wright fails to state a claim for deprivation of procedural due process. To prove a procedural due process claim, a plaintiff must show (1) a protected interest, (2) that was deprived by state action, and (3) that the state provided inadequate procedures. *Reed*, 598 U.S. at 236. Assuming the discovery rule or an equitable tolling doctrine could render Wright's claims against Conlin, Jobe, John Does 1–5, and the City of Roanoke timely, Wright does not assert a protected interest or inadequate procedures. Further, although her claims against Goss and Storen are timely, she fails to assert that their actions deprived her of a protected interest.

14

And, as there is no underlying constitutional violation, Wright fails to state a claim for municipal

liability against the City of Roanoke.

### 1. Protected Interest

As a threshold matter, it is not clear that Wright asserts deprivation of a protected interest.

Wright asserts that she has a liberty interest in (1) her reputation and (2) the ability to pursue her

chosen career. Dkt. 1 ¶ 32. The Fourth Circuit previously held that "[t]he publication of

information regarding child abuse or neglect to entities authorized by law to receive such reports

does not state a claim under § 1983." *Wildauer v. Frederick Cnty.*, 993 F.2d 369, 373 (4th Cir.

1993); *see also Perry v. Carter*, No. 297-CV-893, 1998 WL 1745365, at *4 (E.D. Va. July 27,

1998), *aff'd sub nom. Perry v. City of Norfolk*, 194 F.3d 1305 (4th Cir. 1999) (holding that the

plaintiff failed to state a cognizable liberty interest when he alleged that his reputation suffered

and he lost his job due to listing on the Central Registry for child abuse); *Hodge v. Jones*, 31 F.3d

157, 165 n.9 (4th Cir. 1994) ("[T]he state of the information on the AMF[8] relates more to a

common law claim for defamation than a constitutional claim for deprivation of liberty and

property without due process of law. This is not a defamation case." (citations and emphasis

omitted)); *Billing v. City of Norfolk*, 848 F. Supp. 630, 637 (E.D. Va. 1994) (holding that the

plaintiff was not entitled to employment with a particular private employer or the right to a good

reputation). Similarly, insofar as Wright complains that Defendants failed to comply with state

law, failure to comply with state law cannot provide the basis for a due process claim. *Clark v.*

*Link*, 855 F.2d 156, 163 (4th Cir. 1988).

In child abuse cases, the Fourth Circuit has found that a plaintiff has a liberty interest in

the custody of her children. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 393 (4th Cir. 1990);

---

[8] The AMF is Maryland's version of the Central Registry.

15

*Hodge*, 31 F.3d at 163 ("[A]ctionable violations of the familial right to privacy encompass only those instances where state officials' actions were directly aimed at the parent-child relationship." (collecting cases)). Wright does not assert that the first and second founded dispositions deprived her of custody of her children. Virginia law requires a dispositional hearing following removal of a child for abuse or neglect. Va. Code §§ 161.-278.2. The adjudication of the founded dispositions did not deprive Wright of custody. *See* Dkt. 7-13 at 11 ("During the course of the investigation [culminating in the first founded disposition], AW, KLAW, KLW, and KAW were removed from the home and are currently in foster care."). Wright repeatedly asserts that "[t]he relief requested would not vacate, reverse, modify, or disturb any juvenile court order." Dkt. 1 ¶ 3B. Therefore, Wright does not assert that Defendants infringed upon her right to custody of her children, which is a cognizable liberty interest. Rather, Wright asserts that she has a liberty interest in pursuing a particular career and in her reputation. As these are not constitutionally significant liberty interests, Wright fails to state a claim.

> ### 2. *Process Provided in 2016*

Even assuming Wright's complaint alleges deprivation of a cognizable interest, such as reputational injury accompanied by cognizable stigma and loss of tangible interest, or familial integrity, she received the process due to her. Contrary to Wright's assertions, individual Defendants involved in the 2016 neglect dispositions—Jane Conlin, Lynette Jobe, and John Does 1–5—did not subvert statutory procedures but gave notice and the opportunity to be heard as to each founded disposition. Therefore, Wright fails to state a claim for denial of procedural due process.

> ### a.  **First Founded Disposition**

As to the first founded disposition, Wright alleges that Defendants deprived her of due process because she did not receive adequate notice of the disposition and her appeal rights. Dkt. 1 ¶ 33. I disagree. First, Wright claims that the notice was inadequate because "DSS has not produced a certified mail receipt or any other proof of service establishing that the March 1, 2016 founded disposition notice . . . was ever mailed to Plaintiff." *Id*. ¶ 16. But Wright does not assert that the disposition notice, attached to her complaint as Sealed Exhibit 3, was misaddressed. Rather, she bases her allegations of inadequate notice solely on DSS's inability, 10 years later, to provide concrete evidence of notification. These claims misapprehend the notice requirement. Due process requires that notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Notice by regular mail is generally constitutionally sufficient. *Perry*, 194 F.3d at *7 (citing *Greene v. Lindsey*, 456 U.S. 444, 455 (1982) (holding that CPS's notification system, which used regular mail, was constitutionally adequate for procedural due process)). Insofar as Wright alleges that DSS's practice of utilizing regular mail for disposition notifications is constitutionally inadequate, her claim fails.

Second, Wright's claim that she was denied notice as to the first founded disposition is factually frivolous because DSS records attached to the complaint show that she received notice. Wright alleges that "DSS's own Summary of Notifications . . . page 110 . . . shows every mandatory notification field blank for Plaintiff as the Alleged Abuser/Neglector." *Id*. ¶ 15A; Sealed Exhibit 2 at 3. But the previous page of that summary, produced by DSS in response to Wright's investigation, shows that Wright received written and verbal notification of the initial report, disposition, and her appeal rights. Sealed Exhibit 2. Further, DSS provided Wright with a

17

copy of the first founded disposition letter, which was addressed to her and dated March 1, 2016. Sealed Exhibit 3. The burden is not on DSS to provide certified mail receipts of a decision made ten years earlier.

Even assuming Wright did not receive notice of the first founded disposition, she still fails to state a cognizable deprivation of liberty because she does not assert that the lack of notice was intentional. "Where a government's official act causing injury to life, liberty, or property is merely negligent, 'no procedure for compensation is constitutionally required.'" *Daniels v. Williams*, 474 U.S. 327, 333 (1986) (citations omitted). In *Perry*, the plaintiff did not receive notice of his status as a child abuser because the notification letter was negligently misaddressed. 194 F.3d at *6. The Fourth Circuit held that this error failed to state a claim of denial of due process. *Id*. Wright does not allege that Defendants' intentional misconduct deprived her of notice. Therefore, Wright's claim of denial of due process due to lack of notice as to the first founded disposition must fail.

Wright also asserts that she received inadequate procedure as to the first founded disposition because the founding determination was made "explicitly on history" and "without neutral review." Dkt. 1 ¶ 15D, 30. Under the domestic relations abstention doctrine, federal courts should abstain from hearing federal question cases that necessarily implicate duties arising under family relations law. *Doe v. Mast*, 741 F. Supp. 3d 409, 438 (W.D. Va. 2024); *see also Vyas v. Sofinski*, No. 7:23-CV-00075, 2023 WL 3562976, at *3 (W.D. Va. May 19, 2023), *aff'd*, No. 23-6561, 2023 WL 6058479 (4th Cir. Sept. 18, 2023). Reviewing the merits of the founding determination would require this Court to adjudicate breach of a duty arising under family relations law. *Cf. Kelser v. Anne Arundel Cnty. Dep't of Soc. Servs.*, 679 F.2d 1092, 1095 (4th Cir. 1982) (holding that dismissal of § 1983 claims was not proper because "a decision now by the

18

district court . . . would not require adjusting family status, establishing familial duties, or determining the breach of such duties"). Therefore, to the extent that Wright requests re-adjudication of the first founded disposition, this Court will decline from exercising jurisdiction over that aspect of her claims.

Insofar as Wright alleges that she was denied a hearing, due process requires only "the opportunity to be heard." *Reed*, 598 U.S. at 236. The notification letter informed Wright of her opportunity to appeal DSS's findings through a local conference. Sealed Exhibit 3. Nothing more is required.

### b.  Second Founded Disposition

Wright alleges that she was denied proper notice and the ability to appeal to a neutral decisionmaker as to the second founded disposition. First, Wright's allegations of improper notice are unavailing. Wright admits that she received notice of the disposition, but states that "she was not provided the statutorily required founded disposition notice containing the specific finding, appeal rights, and 30-day appeal deadline." Dkt. 1 ¶ 17. This assertion is directly contradicted by the record. *See* Dkt 7-14 at 2 (notice of founded disposition); Sealed Exhibit 6 (notification of local conference); Sealed Exhibit 4 (Wright's appeal of second founded disposition, which states "I received a letter charging me with neglect."). Even if Wright received statutorily inadequate notice, "it is well settled that violations of state law cannot provide the basis for a due process claim." *Weller*, 901 F.2d at 392 (citing *Clark*, 855 F.2d at 163). And, Wright clearly received some form of notice that "afforded [her] the opportunity to present [her] objections," because she appealed the second founded disposition and apparently attended the local conference. *Mullane*, 339 U.S. at 314; Sealed Exhibit 4.

19

Second, due process requires that Wright be given an opportunity to be heard. Wright's claim that she was denied the opportunity to be heard is legally and factually frivolous because she received the statutorily required hearing. Wright alleges that Conlin deprived her of her statutory right to Commissioner review and "intercepted the appeal, unilaterally classified it as a request for a local conference, and scheduled one for July 8, 2016." Dkt. 1 ¶ 19. Wright does not dispute that she was afforded an opportunity to be heard at the local conference. *Id*. ¶ 21 ("Following the local conference, Conlin issued a July 12, 2016, decision."). She asserts that because her written appeal was addressed to the Commissioner, she was entitled to a hearing before the Commissioner, not Director Conlin. These allegations are insufficient to state a claim for deprivation of due process. The statute provides a local conference as the first step of appellate review. Va. Code § 63.2-1526. Further, although Wright's written notice requesting appeal was addressed to the Commissioner, the request itself asks for "an administrative review before a hearing officer." Sealed Exhibit 4. Wright is not entitled to bypass the statutorily decreed appellate procedure, of which she received explanatory notice, merely because she is dissatisfied with the particular process afforded.

Wright also asserts that "Defendant Jobe's undisclosed conflict of interest deprived Plaintiff of any impartial evaluation at any stage." Dkt. 1 ¶ 33. Even assuming Jobe had a conflict of interest, Wright does not assert that she was involved in any stage of the appeal process. Rather, Conlin scheduled and presided over the local conference and rendered a decision as a neutral decisionmaker. *Id*. ¶¶ 19–21. Further, Wright does not dispute the factual findings that led to the founding disposition. Therefore, it is unclear how any purported conflict of interest deprived Wright of due process.

   3.   *Continuing Violations: 2026 Communications*

In her third claim for relief, Wright alleges that her recent communications with DSS officials Goss and Storen, who were not involved in the 2016 adjudication, constitute additional due process violations. Specifically, she alleges that Goss "committed a new, discrete unconstitutional act by sending Plaintiff written communication that affirmatively ratified and perpetuated the original deprivations." Dkt. 1 ¶ 9. Wright also claims that Storen, who is sued in his official capacity, violated her due process rights by his "ongoing maintenance of Plaintiff's name on the Central Registry." *Id*. ¶ 10. Wright requests that this Court issue permanent injunctions against Storen that require him to "provide Plaintiff with a constitutionally adequate name-clearing hearing" to adjudicate the first and second founded dispositions or, in the alternative "amend or expunge the [founded dispositions] from the Central Registry." *Id*. at 22.

To state a claim under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Assuming Wright has a cognizable interest in either her reputation or familial integrity, she was deprived of that interest by the adjudication of the founded dispositions in 2016. Goss's communications about the process provided in 2016 did not deprive Wright of a protected liberty interest. In response to Wright's request for information about her involvement with DSS, Goss stated "one of the two investigations was appealed by you and was upheld by the agency Director at the time." Sealed Exhibit 8. Wright alleges that this statement was a discrete unconstitutional act because Goss had the "authority to correct the record." Dkt. 1 ¶ 42. In the employment law context, "[a]n employer's refusal to undo a discriminatory decision is not a fresh act of discrimination." *Martin v. Southwestern Virginia Gas Co.*, 135 F.3d 307, 310 (4th Cir. 1998). As discussed above, Conlin's decision to hold a local conference, as provided by the statute, did not deprive Wright of due process. Even assuming Conlin violated Wright's due

21

process rights, Goss only refused to correct that violation. Goss's communications are not a "discrete act," and they did not independently violate the Constitution, so they do not give rise to a due process claim. Therefore, Wright's claims against Goss are dismissed.

Similarly, Storen's refusal to provide Wright with a new hearing to adjudicate the founded dispositions did not deny her due process. Wright received due process in 2016. Storen's implicit refusal to reopen her case, 10 years after the time to appeal has expired, does not deprive her of due process or infringe on a protected interest. For the same reasons, Wright's claim that maintenance of her name on the Central Registry is unlawful is unavailing. *Id.* Wright's claims against Storen are dismissed.

### 4. Municipal Liability

Finally, Wright alleges that Roanoke City is liable due to an unconstitutional policy of depriving alleged abusers of due process. Municipalities are liable under § 1983 "only if 'action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Weller*, 901 F.3d at 398 (quoting *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). As there is no underlying constitutional violation in this case, there can be no municipal liability. *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999). Therefore, Wright's claim of municipal liability is dismissed.

### IV.    Notice of Consideration of Sanctions

This is the fourth lawsuit Wright has filed in this Court since December 2025. *See Wright v. Virginia Dep't of Soc. Servs.*, No. 7:25-cv-00898 (W.D. Va. Dec. 8, 2025); *Wright v. Roanoke City Dep't of Soc. Servs.*, No. 7:26-cv-00048 (W.D. Va. Jan. 30, 2026); *Wright v. Virginia*, No. 7:26-cv-00080 (W.D. Va. Feb. 2, 2026). Although each lawsuit contains different allegations and some different defendants, each is centered on Wright's complex, ongoing child custody

disputes. Courts have the inherent ability to sanction litigants to prevent vexatious and repetitive litigation. 28 U.S.C. § 1615(a). These sanctions may include issuance of a pre-filing injunction. Pre-filing injunctions are not favored, and "must be used sparingly" in light of the Fourteenth Amendment. *Cromer v. Kraft Foods North America, Inc.*, 390 F.3d 812, 817 (4th Cir. 2004). Courts considering issuing a pre-filing injunction must consider the constitutional guarantees of due process and the right of access to the courts, as this right "'lies at the foundation of orderly government.'" *Id.* (quoting *Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 142, 148 (1907)). Considering the four *Cromer* factors,[9] a pre-filing injunction against Wright is not appropriate at this time. However, the Court admonishes Wright that this Court is not the proper forum to adjudicate child custody disputes. Continuing to file lawsuits rooted in child custody may result in sanctions, which may include an order to show cause as to why a pre-filing injunction should not issue.

### V.        Conclusion

Undoubtedly, Wright's continued listing on the Central Registry causes her great angst and concern for possible reputational harm. However, Wright's claims that she was denied due process accrued in 2016, and therefore the statute of limitations expired in 2018. Wright's failure to investigate her status or acknowledge notification of the listing in 2016 does not justify avoidance of the statute of limitations. In the alternative, Wright fails to show a protected liberty interest or inadequate state procedures. Therefore, Wright's claims against Defendants Conlin, Jobe, John Does 1–5, and the City of Roanoke are **DISMISSED**. Wright also fails to show how

---

[9] The four *Cromer* factors are (1) the party's litigation history, including whether she has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party has a good faith basis for pursuing her claims; (3) the burden on the courts, parties, and judicial system; and (4) the adequacy of alternative sanctions. *Cromer*, 390 F.3d at 818 (citations omitted).

Goss or Storen's actions deprived her of a protected interest or are independently unconstitutional, Wright's claims against Goss and Storen are similarly **DISMISSED**. Wright's motion to proceed in forma pauperis (Dkt. 2) is **GRANTED**. Accordingly, Wright's motion to appoint counsel (Dkt. 4) and motion for preliminary injunction (Dkt. 5) are **DENIED** as moot.

An appropriate Order shall follow.

It is so **ORDERED**.

Entered:  July 16, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

24